UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

Nº 11-CV-00009 (JFB) (ARL)

———————————

JOSEPH GUIDA,

Plaintiff,

VERSUS

HOME SAVINGS OF AMERICA, INC., DAVID CIROCCO, & GREGORY CAPUTO,

Defendants.

———————————

**MEMORANDUM AND ORDER**
June 28, 2011

———————————

Joseph F. Bianco, District Judge:

Plaintiffs Joseph Guida ("Guida"), Michael Esposito ("Esposito"), Daniel McGorman ("McGorman"), and Jahn Ramirez ("Ramirez") (collectively "plaintiffs"), bring this putative class action on behalf of themselves, and on behalf of individuals similarly situated, against Home Savings of America, Inc. ("Home Savings" or "defendant"), David Cirocco, and Gregory Caputo (collectively "defendants"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et. seq., and related New York state wage and labor laws.[1]

Home Savings now moves to dismiss plaintiffs' complaint, and compel arbitration on an individual basis pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et. seq. Plaintiffs agree to arbitrate the dispute, but argue that the arbitrator should decide whether the arbitration can proceed on a class basis. For the reasons set forth below, the Court grants in part and denies in part defendant's motion to compel arbitration. Specifically, the Court concludes that the parties must arbitrate this dispute, but that the determination of whether or not the arbitration should proceed on a class basis is for the arbitrator to make in the first instance. As a result, the Court stays this action pending the resolution of the arbitration proceeding.

———————————

[1] Plaintiff Guida, the named plaintiff, filed this lawsuit as a class action under the FLSA, 29 U.S.C. § 216(b), and Federal Rule of Civil Procedure 23(b)(3).

## I. BACKGROUND

### A. The Underlying Facts

The following facts are taken from the Complaint ("Compl."), the Declaration of Greg Reniere ("Reniere Decl.") filed in support of defendant's motion, and the exhibits attached thereto.[2]

Plaintiffs are former employees of Home Savings, a provider of mortgage banking services. (Compl. ¶¶ 4-6; Reniere Decl. ¶¶ 2-9.) All of the plaintiffs signed an Alternative Dispute Resolution Agreement as well as a Compensation Agreement. (Reniere Decl. ¶¶ 2-9.) The terms of the Alternative Dispute Resolution Agreement are identical for all of the plaintiffs. The following are relevant portions from the Alternative Dispute Resolution Agreements:

> I understand that Home Savings of America makes available arbitration for resolution of employment disputes that are not otherwise resolved by internal policies or procedures.
>
> I agree that if I am unable to resolve any dispute through the internal policies and procedures of Home Savings . . . I will arbitrate . . . any legal claim that I might have against Home Savings . . . or its employees, in connection with my employment or termination of employment . . . whether arising out of issues or matters occurring before the date of this Agreement or after such date.
>
> I agree to abide by and accept the final decisions of the arbitration panel as ultimate resolution of any disputes or issues for any and all events that arise out of employment or termination of employment.
>
> I agree that the Employee Dispute Resolution Rules of the American Arbitration Association will apply to any resolution of any such matters. In exchange for the benefits of arbitration, I agree that the arbitrator will only have the power to grant those remedies available in court, under applicable law.

(Reniere Decl. Ex. A (signed by Guida), Ex. C (signed by Esposito), Ex. E. (signed by McGorman), Ex. G (signed by Ramirez).)

It is undisputed by the parties that the Alternative Dispute Resolution Agreements do not explicitly mention class arbitration. Defendant does not contest that the Employee Dispute Resolution Rules of the American Arbitration Association include rules relating to class arbitration.

---

[2] The Court may properly consider documents outside of the pleadings for purposes of deciding a motion to compel arbitration. *See BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 Civ. 839(HB), 2006 WL 2265041, at *3 n. 6 (S.D.N.Y. Aug. 8, 2006) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32-33 (2d Cir. 2001))).

B. Procedural History

Plaintiffs filed the complaint on January 3, 2011. Defendant Home Savings filed a motion to compel arbitration and dismiss the complaint on March 15, 2011. On March 29, 2011, the Court set a pre-motion telephone conference to address defendant's filing of the motion. The conference was held on April 13, 2011. Plaintiffs filed their response to defendant's motion on May 17, 2011. Defendant filed its reply on May 27, 2011. Oral argument took place on June 16, 2011. Defendant submitted a letter to the Court dated June 22, 2011, to address issues raised at oral argument. On June 23, 2011, the Court received plaintiffs' letter in response. The Court has fully considered the submissions and arguments of the parties.

II. STANDARD OF REVIEW

The Court must evaluate a motion to compel arbitration, pursuant to the FAA, under a standard similar to the standard for a summary judgment motion. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980)); *Doctor's Assocs. v. Distajo*, 944 F. Supp. 1010, 1014 (D. Conn. 1996), *aff'd*, 107 F.3d 126 (2d Cir. 1997); *see also Mazza Consulting Grp., Inc. v. Canam Steel Corp.*, No. 08-CV-38 (NGG), 2008 U.S. Dist. LEXIS 32670, at *3 (E.D.N.Y. Apr. 21, 2008). "When such a motion is opposed on the ground that no agreement to arbitrate has been made between the parties, a district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise." *Mazza Consulting Grp., Inc.*, 2008 U.S. Dist. LEXIS 32670, at *3. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

III. DISCUSSION

The plaintiffs and Home Savings agree that there is a valid agreement to arbitrate and that it applies to plaintiffs' FLSA and state law claims. Thus, the parties agree that this Court should compel arbitration in this case. The gravamen of the dispute is whether or not the arbitration can proceed on a class basis and whether it is for this Court or the arbitrator to decide the issue. As set forth below, the Court concludes that this dispute should be arbitrated, but that it is for the arbitrator to decide in the first instance whether or not the arbitration can proceed on a class basis. Furthermore, the Court stays this action pending the resolution of the arbitration.

A. Arbitration on Class Basis

For the reasons set forth below, the Court concludes that where, as here, there is disagreement over whether the agreement to arbitrate permits class arbitration and the agreement does not explicitly address this issue, the ability to proceed on a class basis is a procedural question involving contract interpretation and is therefore for the arbitrator to decide in the first instance.

1. Legal Standard

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the *question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)

3

(quotation marks omitted). What is deemed a question of arbitrabilty has been limited to

> the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Id*. at 83-84. Disputes about whether the parties are bound by the arbitration agreement, or if a particular controversy falls under the scope of an arbitration agreement, are both the type of gateway issues that go to arbitrability and which are for courts to decide. *Id*. at 84. On the other hand, "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Id*. (emphasis in original) (quotation marks omitted). Issues of waiver, delay, "or a like defense" are the types of procedural questions that are left for the arbitrator. *Id*.

2. Analysis

Essentially, the parties dispute whether the ability to proceed on a class basis is more akin to a procedural question or, instead, to an issue of arbitrability. Plaintiffs assert that it is a procedural issue, relying on the Supreme Court's plurality opinion in *Green Tree Financial Corporation v. Bazzle*, 539 U.S. 444 (2003). Home Savings, on the other hand, argues that *Bazzle* has been undermined by the Supreme Court's more recent decision in *Stolt-Nielsen S.A. v. AnimalFeeds International Corporation*, 130 S. Ct. 1758 (2010), which allegedly suggests that whether or not an arbitration can proceed on a class basis is an arbitrability issue that should be decided by the courts. This Court agrees with plaintiffs. Although *Bazzle* is solely a plurality opinion, it is nevertheless instructive. Furthermore, many courts have continued to conclude subsequent to the Supreme Court's decision in *Stolt-Nielsen*, as does this Court, that the ability to proceed as a class in an arbitration proceeding is a procedural question for the arbitrator to decide.

As an initial matter, *Stolt-Nielsen* is consistent with *Bazzle*. In *Bazzle*, the parties "agreed to submit to the arbitrator *all* disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract[,]" but disputed whether class arbitration was permitted under the agreement, which did not explicitly address the issue. 539 U.S. at 447-48, 451-52 (emphasis in original) (quotation marks omitted). The Supreme Court concluded that "the dispute about what the arbitration contract in each case means (*i.e.*, whether it forbids the use of class arbitration procedures) is a dispute relating to this contract and the resulting relationships." *Id*. at 451 (citations and quotation marks omitted). The plurality opinion in *Bazzle* further elaborated that "whether the contracts forbid class arbitration . . . concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." *Id*. at 452. Thus, it was a procedural question concerning "contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question." *Id*. at 453. In *Stolt-Nielsen*, the Supreme Court did not

reach the issue of who must decide whether a class can arbitrate a dispute. However, the Court addressed *Bazzle* in *dicta* as follows:

> [T]he parties appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class arbitration. . . . In fact, however, only the plurality decided that question. But we need not revisit that question here . . . .

130 S. Ct. at 1772. Thus, while *Stolt-Nielsen* pointed out that *Bazzle* did not have the same precedential value as an opinion by a majority of the Court, it did not indicate that the plurality opinion in *Bazzle* was incorrect on the issue of who decides whether a class can arbitrate a dispute. Defendant argues, however, that *Stolt-Nielsen* implies that whether plaintiffs can proceed as a class in arbitration is such a fundamental issue that it is closer to one of arbitrability than procedure and must, therefore, be decided by the courts. This Court does not read such an implication from *Stolt-Nielsen*.[3] As noted above, the *Stolt-Nielsen* Court did not decide the threshold issue of whether the ability to proceed to arbitration on a class basis was for the arbitrators or the courts to decide. Instead, the opinion addressed that issue on the merits, holding that where there was no agreement on class arbitration, to which the parties specifically stipulated, the parties could not be compelled to arbitrate on a class basis. The Supreme Court left open the question of what factors can or should be considered in that analysis where there is no equivalent stipulation by the parties.

This Court concludes, in light of *Stolt-Nielsen* and *Bazzle*, that the ability of a class to arbitrate a dispute where the parties contest whether the agreement to arbitrate is silent or ambiguous on the issue is a procedural question that is for the arbitrator to decide.[4] Even though *Bazzle* does not have the full weight of Supreme Court precedent, it is nevertheless instructive. *See, e.g., Barbour v. Haley*, 471 F.3d 1222, 1229 (11th Cir. 2006) ("Plurality opinions are not binding on this court; however, they are persuasive authority."); *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 274 (3d Cir. 2007) (concluding that *dicta* in Supreme Court opinions has persuasive value). The Second Circuit found *Bazzle* persuasive, as have other courts prior to *Stolt-Nielsen*. *See Vaughn v. Leeds, Morelli & Brown, P.C.*, 315 F. App'x 327, 329 (2d Cir. 2009) (concluding that the district court "properly compelled arbitration on the question of the arbitrability of class claims

---

[3] Although in *Stolt-Nielsen* the Supreme Court referred to the shift from bilateral to class arbitration as "fundamental," 130 S. Ct. at 1776, the Court was simply emphasizing the importance of not reading class arbitration into an agreement lightly.

[4] The Second Circuit specifically distinguished ambiguous agreements on the issue of class arbitration, using the agreement in *Bazzle* as an example of an ambiguous contract where it did not explicitly address class arbitration but the parties nevertheless contested the point based on other factors, from ones that are unambiguous. *See In re Am. Express Merchants' Litig.*, 554 F.3d 300, 311 n.10 (2d Cir. 2009) (distinguishing *Bazzle*, where the agreement was "ambiguous as to whether it permitted" class arbitration, with the one at hand, which "is unambiguous in forbidding arbitration to proceed on a class basis[,]" ultimately deciding whether class waiver was unconscionable under state law), *vacated by* 130 S. Ct. 2401 (2010), *reaffirmed by* 634 F.3d 187, 191 (2d Cir. 2011).

5

under the Settlement Agreement[,]" citing *Bazzle* and *Howsam*)[5]; *JSC Surgutneftegaz v. President & Fellows of Harvard College*, 04 Civ. 6069 (RMB), 2007 U.S. Dist. LEXIS 79161, at *6 (S.D.N.Y. Oct. 11, 2007) (citing *Bazzle* for the proposition that "arbitrators are well situated to answer the question whether contracts forbid[] class arbitration" (quotation marks omitted)); *Scout.com, LLC v. Bucknuts, LLC*, No. C07-1444 RSM, 2007 WL 4143229, at *5 (W.D. Wa. Nov. 16, 2007) (concluding that, in light of *Bazzle*, it was for the arbitrator to decide the procedural question of whether the plaintiffs can arbitrate as a class (collecting cases)). Furthermore, many courts since *Stolt-Nielsen* have continued to follow *Bazzle*'s conclusion that the ability to arbitrate on a class basis is a procedural question left for the arbitrator to decide. This Court finds the Third Circuit's opinion in *Vilches v. The Travelers Companies, Incorporated*, No. 10-2888, 2011 U.S. App. LEXIS 2551 (3d Cir. Feb. 9, 2011), particularly instructive. In *Vilches*, the Third Circuit reconciled *Bazzle* and *Stolt-Nielsen* as follows:

> Although contractual silence [on the issue of arbitration on a class basis] has often been treated by arbitrators as authorizing class arbitration, *Stolt-Nielsen* suggests a return to the pre-*Bazzle* line of reasoning on contractual silence, albeit decided by an arbitrator, because it focuses on what the parties agreed to—expressly or by implication.

*Id.* at *12-13 n.3. The Third Circuit concluded that the ability of the plaintiffs to proceed on a class basis in arbitration was essentially a question of "what *kind of arbitration* proceeding the parties agreed to[,]" *id.* at *10 (emphasis in original) (citing *Bazzle*), and went on to conclude that "[w]here contractual silence is implicated, the arbitrator and not a court should decide whether a contract was indeed silent on the issue of class arbitration, and whether a contract with an arbitration clause forbids class arbitration." *Id.* at *11 (quotation marks omitted) (citing *Stolt-Nielsen*, 130 S. Ct. at 1771-72, describing the plurality opinion in *Bazzle*). In *Vilches*, the agreement in question "did not expressly reference class or collective arbitration or any waiver of the same." *Id.* at *3. The parties debated whether a revised arbitration policy including a class arbitration waiver applied to plaintiffs but agreed that plaintiffs' causes of action alleged in the complaint otherwise fell under the purview of the arbitration agreement. *Id.* at *3-6, *9-10. The court in *Vilches* referred the "questions of whether class arbitration was agreed upon to the arbitrator." *Id.* This Court similarly concludes that *Stolt-Nielsen* and *Bazzle* are reconcilable and that arbitrating on a class basis is a procedural question that is for the arbitrators to decide in accordance with the Supreme Court's analysis in *Stolt-Nielsen*, which provides a framework for the arbitrator's analysis of the issue.

---

[5] Although *Vaughn* is an unpublished opinion, and is therefore not binding on this Court, it is nevertheless highly persuasive authority. *See, e.g., LaSala v. Bank of Cyprus Pub. Co., Ltd.*, 510 F. Supp. 2d 246, 274 n.10 (S.D.N.Y. 2007) (finding an unpublished Second Circuit opinion "highly persuasive . . . and eminently predictive of how the Court would in fact decide a future case such as this one"); *Bernshteyn v. Feldman*, No. 04 Civ. 1774 (GEL), 2006 WL 2516514, at *3 n. 3 (S.D.N.Y. Aug. 29, 2006) (finding an unpublished opinion by the Second Circuit persuasive authority).

6

Nor is *Vilches* alone in its conclusion. There are a number of cases in addition to *Vilches* in which courts have concluded, subsequent to *Stolt-Nielsen*, that the ability of plaintiffs to arbitrate on a class basis is an issue to be determined by the arbitrator. *See, e.g., Aracri v. Dillard's Inc.*, No. 1:10cv253, 2011 WL 1388613, at * 4 (S.D. Ohio Mar. 29, 2011) (concluding that "it is not for this Court, but for an arbitrator to decide whether class arbitration is forbidden under the Arbitration Agreement and Dillard's Rules of Arbitration" where the arbitration agreement did not explicitly mention class arbitration but the parties contested whether Dillard's Rules, to which all arbitration claims were subject, provided for class arbitration); *Smith v. The Cheesecake Factory Restaurants, Inc.*, No. 3:06-00829, 2010 U.S. Dist. LEXIS 121930, at *7 (M.D. Tenn. Nov. 16, 2010) (concluding that "whether the parties agreed to class arbitration is to be resolved by the arbitrator[,]" citing *Stolt-Nielsen* and *Bazzle*); *Fisher v. General Steel Domestic Sales, LLC*, No. 10-cv-1509-WYD-BNB, 2010 U.S. Dist. LEXIS 108223, at *6-7 (D. Col. Sept. 22, 2010) (where parties agreed that plaintiffs' claims were subject to arbitration but were contesting whether the agreement in question permitted class arbitration, "based on the plain language of *Stolt-Nielsen*, it is clear that an arbitrator may, as a threshold matter, appropriately determine whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class" (quotation marks omitted)). *See also Clark v. Goldline Int'l, Inc.*, No. 6:10-cv-01884 (JMC), 2010 U.S. Dist. LEXIS 126192, at *21-22 (D. S.C. Nov. 30, 2010) ("[T]he court notes that whether a class is appropriately certified in this case or otherwise is yet to be determined. Second, whether the Account Agreement precludes any putative class member from bringing a claim has no bearing on the validity or enforceability of the arbitration provisions. Such issues raised by Plaintiffs must be determined by an arbitrator, not this court." (citing *Bazzle*)). *But see Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950 (LBS) (JCF), 2011 U.S. Dist. LEXIS 46994, at *10 (S.D.N.Y. Apr. 28, 2011) (concluding that the ability to arbitrate on a class basis requires a "determination of the scope and enforceability of the arbitration clause, and therefore the issue is appropriately characterized as a dispute over arbitrability[,]" further noting that this question "fits into the narrow circumstances where contracting parties would likely have expected a court to have decided the gateway matter[,]" relying on *Stolt-Nielsen*'s emphasis that *Bazzle* was solely a plurality opinion).[6]

---

[6] Defendant relies on *Goodale v. George S. May International Company* to support its assertion that whether arbitration can proceed on a class basis is a question of arbitrability. No. 10 C 5733, 2011 WL 1337349 (N.D. Ill. Apr. 5, 2011). However, that case is distinguishable from the one at hand. In *Goodale*, the plaintiffs "insist[ed] that the agreement's silence mandates that the Court allow the arbitrator to determine the arbitrability of the class claims." *Id*. at *2. In fact, as the court pointed out, plaintiffs "admit[ted]" in their brief that the agreement was silent on the issue of class arbitration. As a result, relying on *Stolt-Nielsen*, the court concluded that it was for the court to decide whether class claims fall "within the agreement's scope" where the agreement was silent on the issue because "Supreme Court precedent . . . squarely foreclose[d] the possibility that the class claims are arbitrable." *Id*. In this case, however, the parties contest whether the agreements are actually "silent" on class arbitration. Although it is apparent that the agreements at hand do not explicitly address class arbitration, plaintiffs assert that by

7

At oral argument, in addition to *Stolt-Nielsen*, defendant relied on the Supreme Court's decision in *AT & T Mobility LLC v. Concepcion* to argue that the ability to arbitrate on a class basis is not a procedural issue. 131 S. Ct. 1740 (2011). However, defendant's reliance on *Concepcion* is misplaced. In *Concepcion*, the Supreme Court was not addressing the threshold issue of who should get to decide whether the arbitration could proceed on a class basis. Instead, the Supreme Court decided that a California rule allowing consumers to demand class arbitration despite any agreement stating otherwise was inconsistent with the FAA. 131 S. Ct. at 1750-51. In *Concepcion*, the Supreme Court essentially stated that class arbitration was disfavored even though the parties could agree to arbitrate on a class basis, explaining that

> class arbitration *requires* procedural formality. The AAA's rules governing class arbitrations mimic the Federal Rules of Civil Procedure for class litigation. And while the parties can alter those procedures by contract, an alternative is not obvious If procedures are too informal, absent class members would not be bound by the arbitration. . . . We find it unlikely that in passing the FAA Congress meant to leave the disposition of these procedural requirements to an arbitrator. Indeed, class arbitration was not even envisioned by Congress when it passed the FAA in 1925 . . . And it is at the very least odd to think that an arbitrator would be entrusted with ensuring that third parties' due process rights are satisfied.

131 S. Ct. at 1751-52 (emphasis in original) (citations omitted). It is apparent that the Supreme Court simply intended to say that arbitration on a class basis is not a preferred method to proceed and should not be inferred lightly from a contract. According to *Concepcion*, the procedural requirements necessary to safeguard the interests of an entire class are best carried out in a court rather than arbitration setting. However, nowhere did the Supreme Court suggest that it was for the courts to decide whether the parties agreed to arbitrate on a class basis. Furthermore, courts have relied on *Bazzle* even after *Concepcion* was issued. *See, e.g., Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, No. 10-1638, 2011 U.S. App. LEXIS 9107, at *6, *12, *14 (1st Cir. May 4, 2011) (referring to *Concepcion* and citing *Bazzle* in support of the court's conclusion that where "the party's claim turns on a construction of ambiguous terms of the agreement, the challenge does not present a question of arbitrability to be decided by a court, but rather an issue of contract interpretation to be resolved in the first instance by an arbitrator" so that it was for the arbitrator to decide whether the scope of the remedies permitted under the agreement in question included all remedies

---

referring to the rules of the American Arbitration Association, which permit class arbitration, the arbitration agreements allowed for class arbitration. Silence on the issue of class arbitration in an agreement does not "simply mean that the clause made no express reference to class arbitration. Instead, it meant that all the parties agree that when a contract is silent on the issue there's been no agreement that has been reached on that issue." *Aracri*, 2011 WL 1388613, at *4 n. 2 (quotation marks omitted) (citing *Stolt-Nielsen*).

available under federal law (quotation marks omitted)).[7]

In sum, the Court concludes that the arbitration panel will decide whether or not the plaintiffs in this case can proceed on a class basis. The Court, therefore, does not address the merits of the parties' arguments regarding whether class arbitration is appropriate.

B. Staying the Litigation

The remaining issue is whether the litigation should be stayed or dismissed pending arbitration. In its motion papers, defendant argues that the case should be dismissed because all issues in the dispute are subject to arbitration. At oral argument defendant indicated that, in the alternative, it requests a stay of the action. Plaintiffs also indicated at oral argument that they would like the action stayed. Pursuant to Section 3 of the FAA,

> [t]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. The district court can exercise its discretion to stay the proceeding or can conclude that the litigation should be dismissed. *See Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 92-93 (2d Cir. 2002). A decision to dismiss has implications for the speed with which the arbitration of the dispute may begin because a dismissal is reviewable by an appellate court under Section 16(a)(3) of the FAA, whereas a stay is an unappealable interlocutory order under Section 16(b). *Id.* at 93. Staying the action is, therefore, more likely to allow the matter to proceed to arbitration in an expeditious manner. *Id.* The Second Circuit urges courts deciding whether to dismiss or stay litigation when referring a matter to arbitration to "be mindful of this liberal federal policy favoring arbitration agreements" and consider that "[u]nnecessary delay of the arbitral process through appellate review is disfavored." *Id.* (citation and quotation marks omitted).

---

[7] At oral argument, defendant also referred to *Jock v. Sterling Jewelers, Incorporated*, and *Safra National Bank of New York v. Penfold Investment Trading, Limited*, in support of its argument. First, *Jock* does not address the threshold question of who should decide whether the parties agreed to class arbitration. In *Jock*, the arbitration panel permitted class arbitration and the court addressed the merits of that decision. In light of *Stolt-Nielsen*, the *Jock* court indicated that the agreement in question did not provide for class arbitration. 725 F. Supp. 2d 444, 450 (S.D.N.Y. 2010). The court explained that it would not remand this issue to the arbitration panel because that panel had already "adjudicated the issues submitted to them." *Id.* at 449 n. 5. Nowhere does *Jock* suggest that it was not for the arbitration panel to decide in the first instance whether class arbitration was permitted under the agreement. With respect to *Safra*, the court held that issues of joinder and consolidation are for the arbitrator to decide. No. 10 Civ. 8255 (RWS), 2011 WL 1672467, at *5 (S.D.N.Y. Apr. 20, 2011). However, in *dicta*, *Safra* described *Stolt-Nielsen* as suggesting that "absent an agreement to arbitrate on a class basis, the availability of class arbitration is a gateway issue to be decided by the courts." *Id.* at *3. The decision does not elaborate on the court's reasoning and this Court finds it unpersuasive for the reasons stated *supra*.

9

The Court concludes that a stay is appropriate in this case. As an initial matter, during oral argument defendant requested a stay in the alternative and plaintiffs also requested a stay, rather than dismissal. This Court recognizes that some courts have held that where "none of plaintiff's claims remain to be resolved by this court, . . . there is no reason to stay-rather than dismiss-this action." *Mahant v. Lehman Bros.*, No. 99 Civ. 4421(MBM), 2000 WL 1738399, at *3 (S.D.N.Y. Nov. 22, 2000); *see also Mazza Consulting Grp., Inc. v. Canam Steel Corp.*, No. 08-CV-38 (NGG), 2008 U.S. Dist. LEXIS 32670, at *19-20 (E.D.N.Y. Apr. 21, 2008); *Perry v. N.Y. Law Sch.*, No. 03 Civ. 9221(GBH), 2004 WL 1698622, at *4 (S.D.N.Y. July 28, 2004). However, in the case at hand, the Court believes that the more appropriate action is to stay the proceedings and compel arbitration, particularly to promote expeditious resolution of this dispute. *See Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright."); *see also Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.").

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendant's motion to compel arbitration. The parties shall arbitrate this dispute and the arbitrator will decide whether or not the arbitration can proceed on a class basis. For the reasons set forth above, this lawsuit is stayed pending completion of the arbitration. Counsel for plaintiffs is directed to file a status letter to the Court by September 30, 2011, advising the Court as to the status of the arbitration.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  June 28, 2011
         Central Islip, NY

\* \* \*

Plaintiffs are represented by Erik Harald Langeland, Esq., Erik H. Langeland, P.C., 500 Fifth Avenue, Suite 1610, New York, New York, 10110. Defendant Home Savings is represented by Linda T. Prestegaard, Phillips Lytle LLP, 1400 First Federal Plaza, 28 East Maine Street, Rochester New York 14614.