**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
JOSEPH GUIDA, individually and on behalf of all
others similarly situated,

                              Plaintiff,

            -against-

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for Home Savings of America,
DAVID CIROCCO, GREGORY CAPUTO,
DIRK S. ADAMS, GREG RENIERE, and
MARTI TROMLEY,

                              Defendants.
----------------------------------------------------------------X

                                                    **MEMORANDUM**
                                                    **AND ORDER**

                                        CV 11-0009 (JMA) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      PRELIMINARY STATEMENT

        Plaintiff Joseph Guida ("Guida"), individually and on behalf of other persons similarly

situated (collectively, "Plaintiffs") commenced this action against Defendants Federal Deposit

Insurance Corporation ("FDIC"), as receiver for Home Savings of America Inc. ("Home

Savings"), David Cirocco ("Cirocco"), Gregory Caputo ("Caputo"), Dirk S. Adams ("Adams"),

Greg Reniere ("Reniere"), and Marti Tromley ("Tromley") (collectively, "Defendants"), pursuant

to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 *et seq*., and New York Labor Law

("NYLL"), Article 19 and Article 6.  Plaintiffs allege that Defendants' failed to pay minimum

wage and overtime wages.  *See generally* Second Amended Complaint ("Second Am. Compl.")

[DE 39].

        Individual Defendant Dirk S. Adams' ("Defendant" or "Adams") has moved for partial

summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  On

November 1, 2019, Judge Azrack referred the motion to this Court for a Report and

Recommendation as to whether the motion should be granted.  *See* November 1, 2019 Electronic

Order.  Thereafter, the parties consented to the jurisdiction of this Court for purposes of adjudicating the motion and entering a final order, pursuant to 28 U.S.C. § 636(c).  *See* DE 160-161.  For the reasons set forth below, Defendant's motion for partial summary judgment is GRANTED, in part, and DENIED, in part.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Preliminary Issue

At the outset, the Court notes that both Defendant Adams' Rule 56.1(a) Statement of Undisputed Material Facts and Plaintiffs' Rule 56.1(b) Response to Defendant's Statement of Undisputed Material Facts are deficient in several respects.  Defendant's Rule 56.1(a) Statement is voluminous, convoluted, occasionally lacks citation to evidence in the underlying record, and contains lengthy factual paragraphs -- the majority of which are *not material* to the instant motion.  *See I.M. v. United States,* 362 F. Supp. 3d 161, 190 (S.D.N.Y. 2019) ("On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law.").  Plaintiffs' 56.1(b) Response routinely responds with denials but without citation to evidence in the underlying record.  Plaintiffs also omit statements of additional material facts which they instead improperly seek to include by way of reference in their memorandum in opposition to the instant motion.  Plaintiffs attach several documents to their 56.1(b) Response and memorandum in opposition, without any affidavit attesting to the accuracy and authenticity of the documents.  Moreover, Plaintiffs exclude materially relevant information regarding the documents, thereby creating as many questions as they answer.

Here, the parties' failures to comply with Local Civil Rule 56.1 has "thwarted the purpose of the rules, which is 'to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties.'"

*Hengjin Sun v. China 1221, Inc.*, 12-CV-0071, 2015 WL 5542919, at *3 (S.D.N.Y. Aug. 12, 2015) (quoting *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 74 (2d Cir. 2001)); *Martinez v. Pao's Cleaning, Inc.*, No. 16-cv-6939, 2018 WL 6303829, at *4 (E.D.N.Y. Dec. 3, 2018).  As a result of these deficiencies, the Court has conducted an independent review of the underlying record, the parties' Rule 56.1 Statements, and the exhibits submitted in connection with the instant motion.  From these, the Court references what it considers to be the undisputed facts or facts uncontroverted by admissible evidence.  In doing so, the Court shall construe the facts in the light most favorable to the non-moving party and will resolve all factual ambiguities in the non-movant's favor.  *See Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Capobianco v. New York*, 422 F. 3d 47, 50 n.1 (2d Cir. 2001).  Where, as here, the procedural history and material facts are often one in the same or are closely intertwined, the Court will recite them together for purposes of this motion.

**B.     Undisputed Facts**

   *1.     Commencement of This Action*

  On January 3, 2011, Plaintiff Guida filed the initial Complaint against Defendants Home Savings, Cirocco[1], and Caputo[2] asserting causes of action under the FLSA and the NYLL for Defendants' failure to pay minimum wage and overtime wages.  *See generally* Compl. [DE 1].

---

[1]     The docket does not reflect that the Amended Complaint was ever served on Defendant Cirocco.  On April 30, 2013, the process server indicated that he was returning the summons unexecuted and noted that "[t]his location is for Regis.  David Cirocco has not been at this location for approximately two – three years."  DE 27.  A *Second* Amended Complaint – the operative pleading in this matter -- was filed on September 26, 2013.  *See* DE 39.  The docket, however, does not show any summons ever having been issued for Cirocco with respect to the Second Amended Complaint.

[2]     Likewise, the docket does not reflect any summons having been issued to Defendant Caputo with respect to any of the pleadings filed in this action.

In addition to the individual claims, Plaintiffs sought to certify a collective action for their FLSA claims under 29 U.S.C. § 216(b), and to certify their NYLL claims as a class action under Rule 23(b)(3). *Id*.

Defendant Home Savings was a federally chartered stock savings and loan association. *See* DE 5-3 ¶ 1. Plaintiffs were employed as loan officers by Home Savings and were paid on a commission-only basis. *See* DE 39 at 1-2. Plaintiffs allege that they did not receive minimum wage or overtime wages for the hours worked and were paid solely on a commission basis. *See id*. If they did not earn a commission during the pay period, they received no wages.

On January 19, 2011, four individuals filed consent forms to opt-in to the action. These individuals included Guida, Michael Esposito ("Esposito"), Daniel McGorman ("McGorman"), and Jahn Ramirez ("Ramirez"). *See* DE 2. Defendant Home Savings moved to dismiss the Complaint and compel arbitration on March 15, 2011. *See* DE 5. Judge Bianco granted Defendant Home Savings' motion, finding that the dispute should be arbitrated but also determining that it was a matter for the arbitrator to decide whether the arbitration could proceed on a class basis. *See* June 28, 2011 Memorandum and Order [DE 14] at 3. Judge Bianco then stayed this action pending resolution of the arbitration proceeding. *Id*.

## 2. Arbitration Between 2011 and 2013l

On July 21, 2011, Plaintiffs filed a demand for arbitration with the American Arbitration Association ("AAA"). *See* Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summ. J. ("Pls.' Opp'n"), Ex. A [DE 156-1]. That same day, three individuals submitted opt-in consent forms with AAA, including Bryant F. Magee ("Magee"), Perry DeSantis ("DeSantis"), and Artem Uvaydov ("Uvaydov"). *See* Defendant's Rule 56.1(a) Statement of Undisputed Material Facts ("Def.'s SOMF"), Ex. 17 [DE 154-6]. Up until the filing of the instant motion,

4

Plaintiffs Magee, DeSantis, and Uvaydov never filed their opt-in consent forms with the Court. On December 5, 2011, the following nine individuals submitted opt-in consent forms to AAA: David Ambaln ("Ambaln"), Michael Ciavarella ("Ciavarella"), Nelson Hernandez ("N. Hernandez"), Richard Hernandez ("R. Hernandez"), Maria Keegan ("Keegan"), Kenneth Laudante ("Laudante"), Daniel Montenegro ("Montenegro"), Jason Shannon ("Shannon"), and John Viteritti ("Viteritti"). *See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summ. J., Ex D (Exhibits) [DE 156-4]. The Plaintiffs who filed their opt-in consent forms in the arbitration proceeding on December 5, 2011 thereafter filed their consent forms in the Court.

On February 24, 2012, the Office of the Comptroller of the Currency closed Defendant Home Savings. *See* DE 17-1 at 5; DE 44-1 at 2. As a result, the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver for Home Savings. *See* DE 17-1 at 10. On July 9, 2012, Judge Bianco granted the FDIC's motion to substitute FDIC, as receiver for Home Savings, as the Defendant in this action, and to continue staying the action pending arbitration. *See* DE 19. Shortly thereafter, on July 20, 2012, Defendant FDIC repudiated all agreements between Home Savings and its employees including, but not limited to, the agreement to arbitrate all legal claims against Home Savings. *See* DE 20; DE 20-1. Defendant FDIC subsequently published notice regarding its appointment as receiver and advised all potential claimants to submit claims to the FDIC by May 31, 2012.[3] *See* DE 44-1 at 2. A total of 20 individuals submitted claims to Defendant FDIC (collectively, "Claimants"). *See id.*

---

[3]     The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, § 183 *et seq*, imposes a mandatory administrative claims procedure by which claims must be submitted to the receiver of the failed financial institution for review.

### 3.    *Continuation of the Action in District Court from 2013*

On February 15, 2013, Plaintiffs moved to lift the stay in this action based on Defendant

FDIC's repudiation of the arbitration agreements and sought leave to file an Amended Complaint

to add Home Savings' executives Adams, Reniere, and Larry D. Hartwig ("Hartwig") as

Defendants in their individual capacities.  *See* DE 20.  No opposition was filed to Plaintiffs'

motion.  Consequently, Judge Bianco lifted the stay and granted Plaintiffs leave to file an

Amended Complaint on March 15, 2013.  *See* March 15, 2013 Electronic Order.  An Amended

Complaint was filed on March 20, 2013.  *See* DE 24.  The parties stipulated to the dismissal of

this action against Defendant Hartwig.  *See* DE 31.  On September 26, 2013, Plaintiffs filed a

Second Amended Complaint which added Marti Tromley as a Defendant to the action.  *See*

Second Am. Compl.

On November 26, 2013, the parties filed an executed settlement agreement between

Defendant FDIC and 18 of the Claimants (the "Settlement Agreement"), which resolved the

affected Claimants' FLSA and NYLL claims subject to Judge Bianco's *Cheeks* review and

approval.  *See* DE 44; DE 44-1.  The two Claimants who did not reach a settlement with

Defendant FDIC were DeSantis and Uvaydov "due to the fact that Home Savings[] had no

records of [their] employment with Home Savings[]."  *See* DE 44-1 at 5.  That same day, 12

individuals filed opt-in consent forms to join the court action:  Ambaln, Ciavarella, N.

Hernandez. R. Hernandez, Keegan, Laudante, Daniel Montenegro, Shannon, Viteritti, William

Mansi ("Mansi"), Robert Metrock ("Metrock"), and Dennis W. Nelson ("Nelson").  *See* DE 43.

On December 3, 2013, Judge Bianco approved the Settlement Agreement as fair and reasonable.

As a result, the FDIC was dismissed from this action.  *See* DE 46.

Nicholas Castaldo ("Castaldo") filed an opt-in consent notice to join the court action on February 7, 2014. *See* DE 48. On September 16, 2014 and December 2, 2014, the parties filed stipulations dismissing Defendant Reniere [DE 63] and Defendant Tromley [DE 73] from the case. As a result, Defendant Adams became the sole remaining defendant in this action. Defendant Adams filed an Answer to the Second Amended Complaint on July 27, 2015. *See* DE 99. Thereafter, the parties began exchanging discovery.

### 4. *Discovery*

In relation to the instant motion, Defendant Adams attempted to gather information by way of interrogatories and document demands regarding the opt-in Plaintiffs' identities, dates of employment with Home Savings, locations of employment with Home Savings, and earned wages from Home Savings. Plaintiff Guida served responses to Defendant's "First Interrogatories" which had requested, among other things, the name, address, job history between 2009 and 2012, and dates and locations of employment with Home Savings for the "individuals filing consents for the collective action." *See* Def.'s SOMF, Ex. 14, Response to Defendant Adams "First Interrogatories," Interrogatory No. 2 [DE 154-6]. In response to the request, Plaintiff Guida identified 19 opt-in Plaintiffs and listed the office address of Plaintiffs' counsel as the address for each opt-in. *See id*. No other information regarding the opt-ins was provided in those specific responses.[4]

Plaintiffs served responses to Defendant's "Document Production Requests to Collective Action Filers" which sought, among other things, all documents exchanged between the opt-in

---

[4]    Thereafter, Plaintiff Guida served a supplemental response to Defendant's "First Interrogatories" on December 4, 2015. However, the supplemental responses did not include any additional information regarding the opt-in Plaintiffs, except for Plaintiff Guida. *See* Def.'s SOMF, Ex. 15.

Plaintiffs and Home Savings as well as the first two pages of the opt-in Plaintiffs' federal tax returns for the year(s) the opt-in Plaintiffs were employed by Home Savings. *See* DE 110 at 10-12. Plaintiffs objected to the requests. *Id*. Subsequently, Plaintiffs served supplemental responses to Defendant's "Document Production Request to Collective Action Filers" which indicated that no documents other than those already produced existed. *Id*. With respect to the income tax returns, Plaintiffs indicated that they would be amenable to requesting the records from the IRS. *See* Def.'s SOMF, Ex. 12.

Plaintiffs served responses to Defendant's "Document Requests Number One" which sought, among other things, "all documents filed by either lawyer or firm in the arbitration … held under the auspices of the American Arbitration Association." *See* Def.'s SOMF, Ex. 13. In response, Plaintiffs produced documents bates-stamped GUIDA000001-802. *Id*. Among the documents produced was Plaintiff Magee's opt-in consent form filed with AAA. *See* Def.'S SOMF, Ex. 17, GUIDA 961[DE 154-6]. In conjunction with the discovery demands served on the Plaintiffs, Defendant also reached out to AAA and the arbitrator who presided over the dispute to request a copy of the arbitration record. *See* Def.'s SOMF, Ex. 18 [DE 154-6]. Defendant Adams included in his submission a February 1, 2018 email he received from Jonathan Weed, Manager of ADR Services at AAA stating that he was the administrator handling the matter for AAA. In pertinent part, the Weed email states that Arbitrator Dineen "must decline to respond to your request as she must remain neutral and cannot assist either party with discovery inquiries. She has also confirmed that she has destroyed any records related to this matter in the time since it was closed." *Id*., Ex. 18.

Defendant Adams filed a motion to compel Plaintiff Guida to respond to Defendant's First Interrogatories seeking, among other things, the names, addresses, and employment

information of the opt-in Plaintiffs.[5]  *See* DE 107.  Judge Brown denied the motion, without

prejudice, based on the Defendant's failure to adequately meet and confer by way of an actual

conversation with Plaintiffs' counsel as required under Local Civil Rule 37.3.  *See* November 17,

2015 Electronic Order.  A few days later, Defendant Adams filed a motion to preclude testimony

at trial regarding any of the topics covered by the document demands served on the Plaintiffs

based on their failure to provide adequate responses to the demands.  *See* DE 110.  Judge Brown

denied the motion to preclude, without prejudice, one again based on Defendant's failure to

adequately meet and confer in the manner previously instructed by Judge Brown.  *See*

December 2, 2015 Electronic Order.

Between January 19, 2016 and February 16, 2016, Defendant filed an additional five

discovery motions.[6]  *See* DE 111-113; DE 118-119.  None of these motions involved any of the

---

[5]     That same day, Defendant Adams also filed a motion to preclude Plaintiff Guida from introducing evidence of the computation of damages at trial in light of his failure to provide any such information in his Rule 26(a) Initial Disclosure.  *See* DE 106.  Judge Brown denied Defendant's motion based on the failure to adequately meet and confer. *See* November 17, 2015 Electronic Order.

[6]     On January 19, 2016, Defendant Adams renewed his motion to preclude Plaintiff Guida from introducing any evidence of damages at trial.  *See* DE 112.  That same day, Adams also filed two separate motions to compel the deposition of Plaintiffs' counsel [DE 111] and Plaintiff Guida [DE 113].  Judge Brown denied all three of Defendant's motions on the grounds that Defendant's attempts to meet and confer continued to be inadequate.  *See* February 12, 2016 Electronic Order.  With respect to evidence of damages, Judge Brown further found that Defendant "failed to meet his burden that Plaintiff has not provided the documents and information in his possession."  *Id*.  Defendant was not permitted to depose Plaintiffs' counsel.  However, to move the action forward, Judge Brown compelled the deposition of Plaintiff Guida, notwithstanding Defendant's failure to adequately meet and confer.  *Id*.  Defendant Adams was also cautioned that notwithstanding his *pro se* status, he is an attorney, and that his continued failure to meet and confer could result in the imposition of sanctions.  *Id*.

On February 16, 2016, Defendant Adams moved to compel the production of documents and depositions of four opt-in Plaintiffs -- none of whom are involved in any disputes raised in the instant motion.  *See* DE 118-119.  Since Defendant presented evidence that Plaintiffs' counsel refused to engage in any meet and confer session over the telephone, Judge Brown

Plaintiffs affected by the disputes raised in the instant motion.  A month later, Defendant Adams filed a motion seeking, among other things, sanctions against Plaintiffs' counsel for their purported refusal to provide Defendant with "any and all discovery access to any of the collective action filers identified by plaintiff's counsel."  *See* DE 122.  Although convoluted and unclear, it appears that the gravamen of the motion was counsel for Plaintiffs' purported failure to produce any discovery related to the opt-in Plaintiffs.  *Id*. at 1-2, 4.  It also appears from the language in Defendant's motion that he narrowed his request for discovery to only four opt-in Plaintiffs -- seemingly to preempt any argument regarding the purported burden associated with production of the requested discovery as to all Plaintiffs.  *Id*. at 4.  On April 5, 2016, Judge Brown permitted Defendant to conduct the depositions of the four opt-in Plaintiffs identified in the motion and denied Defendant's request for sanctions.  *See* May 5, 2016 Electronic Order. The remaining issues raised in Defendant's March 24, 2016 motion, however, were not addressed.  *Id*.

Fact discovery concluded on September 6, 2016.  *See* May 19, 2016 Electronic Order. Discovery limited to Defendant's ability to satisfy any judgment in this matter concluded on February 28, 2018.  *See* September 25, 2017 Electronic Order.

### C.    Motion for Partial Summary Judgment

Between March 16, 2018 and April 5, 2018, Defendant filed five letter requests for a pre-motion conference in anticipation of moving for summary judgment against the various Plaintiffs.  *See* DE 143-147.  Judge Bianco waived his pre-motion conference requirement and set a briefing schedule for Defendant's motions for partial summary judgment.  *See* DE 149.  On

---

denied the motion, without prejudice, and with the right to renew, and directed Plaintiff's counsel to meet and confer with Defendant.  *See* March 2, 2016 Electronic Order.

July 12, 2019, Defendant filed a motion for partial summary judgment on the NYLL minimum wage and overtime claims (Counts I and II) brought by Plaintiffs Christian Benitez ("Benitez"),[7] DeSantis, Magee, Metrock, Nelson, and Uvaydov and on Plaintiffs' FLSA minimum wage and overtime wage claims (Counts III and IV) as to Ambaln, Benitez, Castaldo, Ciavarella, DeSantis, N. Hernandez, R. Hernandez, Keegan, Laudante, Magee, Mansi, Montenegro, Shannon, Uvaydov and Viteritti.  *See* Defendant's Memorandum of Law in Support of Mot. for Partial Summ. J. ("Def.'s Mem.") [DE 154-1].  Defendant's motion is based on three primary defenses, including collateral estoppel, statute of limitations, and choice-of-law/due process.  *See generally id*.  Plaintiffs opposed Defendant's motion and submitted documentation in support of their opposition.  *See* Pls.' Opp'n.  Defendant Adams filed a reply, chiefly taking issue with the documentation attached to Plaintiffs' opposition, claiming it was not produced during discovery. As a result, Adams requests that the evidence be precluded.  *See* Defendant's Reply Memorandum in Support of Mot. for Partial Summ. J. ("Def.'s Reply.") [DE 158].

This action was thereafter reassigned to Judge Azrack, who referred Defendant's motion for partial summary judgment to this Court for a report and recommendation as to whether the motion should be granted.  *See* November 1, 2019 Electronic Order.  On December 4 and December 5, 2019, pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings and enter a final order on this motion. DE 160.  Judge Azrack "so ordered" the consent on December 5, 2019.  DE 161.

---

[7]     Christian Benitez did not file an opt-in consent form in the arbitration proceeding or in this Court.

III.   <u>STANDARD OF REVIEW</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F. 3d 102, 108 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F. 3d 130, 137 (2d Cir. 2008).  To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party.  *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F. 3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F. 3d 69, 75 (2d Cir. 2005).  In dispatching this task, a court need only consider admissible evidence.  *Porter v. Quarantillo*, 722 F. 3d 94, 97 (2d Cir. 2013) (quoting *Raskin v. Wyatt Co.*, 125 F. 3d 55, 66 (2d Cir. 1997)).

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden shifts to the non-movant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F. 3d 263, 273 (2d Cir. 2006); *Miller v. Nassau Health Care Corp.*, No. 09-CV-5128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012).  "[T]he non-movant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment."  *Salahuddin*, 467 F. 3d at 273; *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F. 3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment,

the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor.").

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' ... because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *SEC v. Meltzer,* 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted).  "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim."  *Meltzer,* 440 F. Supp. 2d at 187.

## IV.   DISCUSSION

### A.   Collateral Estoppel/Issue Preclusion

Defendant moves for summary judgment against DeSantis and Uvaydov on their minimum wage and overtime claims under the FLSA and the NYLL (Counts I-IV) on the basis that the claims are barred by issue preclusion.  *See* Def.'s Mem. at 13-17.  Defendant argues that the FDIC's findings of fact made in support of its rejection of DeSantis and Uvaydov's claims must be given a preclusive effect.  *See id*.  Specifically, the Defendant relies on language contained in the Settlement Agreement explaining that the FDIC disallowed DeSantis and Uvaydov's claims "due to the fact that Home Savings[] had no records of [their] employment with Home Savings[]."  *See id*. at 13.

The doctrine of issue preclusion, also known as "collateral estoppel," "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."  *Forrester v. Corizon Health, Inc.,* 278 F. Supp. 3d 618,

625 (E.D.N.Y. 2017), *aff'd,* 752 Fed. App'x 64 (2d Cir. 2018) (citing *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 288 (2d Cir. 2002)).   Under federal law, issue preclusion applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."   *Id.* (citing *Marvel Characters, Inc.,* 310 F. 3d at 288-289).   There is "no discernible difference between federal and New York law concerning … collateral estoppel."   *Marvel Characters, Inc.,* 310 F. 3d at 286.   "Under certain circumstances, final decisions of administrative agencies acting in their adjudicative capacity may also be given collateral estoppel effect."   *Sec. & Exch. Comm'n v. Hansen*, No. 13-CV-1403, 2017 WL 1298022, at *4 (S.D.N.Y. Mar. 31, 2017), *aff'd sub nom. United States Sec. & Exch. Comm'n v. Hansen*, 712 Fed. App'x 99 (2d Cir. 2018).

While the FDIC is an administrative agency that was acting in an adjudicative capacity regarding the claims filed against Home Savings, *see* 12 U.S.C. § 1821 (d)(3)-(5), Defendant has not explained how the FDIC's findings in the Settlement Agreement served as "resolution of the issue [] necessary to support a valid and final judgment on the merits."   After the FDIC makes findings in support of either the allowance or disallowance of a claim, a claimant may either request an administrative review, file suit on the claim, or continue the action commenced before the appointment of a receiver.  *See* 12 U.S.C. § 1821 (d)(6)(A).   It is unclear how the FDIC's findings in the Settlement Agreement supported a valid and final judgment on the merits, especially in the light of the language contained in the Settlement Agreement providing that DeSantis and Uvaydov "have elected not to challenge the FDIC's disallowance of their claims, without prejudice to their claims against any other defendants in this Action."   *See* DE 44-1 at 5.

14

While the Court is not entirely persuaded that issue preclusion necessarily bars DeSantis and Uvaydov's FLSA and NYLL claims, DeSantis and Uvaydov have nonetheless expressly stated that they do not oppose entry of summary judgment against them on their FLSA and NYLL claims. *See* Pls.' Opp'n at 1, n. 3.   Accordingly, the Court finds that DeSantis and Uvaydov have abandoned their minimum wage and overtime claims under the FLSA and NYLL (Counts I-IV).  Therefore, the Court GRANTS summary judgment in favor of Defendant Adams on Counts I - IV of the Second Amended Complaint.

### B.    Due Process Clause of the Fourteenth Amendment

Defendant moves for summary judgment against Magee, Metrock, and Nelson on their minimum wage (Count I) and overtime (Count II) claims under the NYLL on the assertion that no evidence was provided to Defendant that these individuals "had any employment contacts with New York State" and, "[a]s a consequence, New York State Labor Law does not apply." *See* Def.'s Mem. at 11; *Maco v. Baldwin Union Free Sch. Dist.,* 249 F. Supp. 3d 674, 678 (E.D.N.Y. April 13, 2017) ("Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim.") (citation omitted).

The Court points out that Defendant does not clearly articulate under what legal theory he is moving for summary judgment against Magee, Metrock, and Nelson.  However, he refers to the Ninth Circuit's opinion in *Sullivan v. Oracle Corp.,* 662 F. 3d 1265, 1271 (9th Cir. 2011) where Oracle argued that the state substantive law which was applied in that action violated the constitutional limitations on choice of law mandated by the Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause of Article IV, § 1.  Notwithstanding that argument, Plaintiffs Magee, Metrock, and Nelson do not dispute the allegations made

regarding their contacts with New York and expressly state that they do not oppose the entry of summary judgment against them on their NYLL claims.  *See* Pls.' Opp'n at 1, n. 2.  Accordingly, the Court finds that Magee, Metrock, and Nelson have abandoned their minimum wage (Count I) and overtime (Count II) claims under the NYLL.  Consequently, the Court GRANTS summary judgment in favor of Defendant Adams on these claims.

### C.   Statute of Limitations

#### 1.   *Equitable Tolling*

Defendant moves for summary judgment against Plaintiffs Ambaln, Benitez, Castaldo, Ciavarella, N. Hernandez, R. Hernandez, Keegan, Laudante, Magee, Mansi, Montenegro, Shannon, and Viteritti on their minimum wage and overtime claims (Counts III and IV) under the FLSA on the grounds that these claims are time-barred.[8]

Under the FLSA, a plaintiff must commence a suit within two years after the cause of action has accrued, unless a plaintiff can demonstrate that a defendant's violation of the FLSA was willful, in which case a three-year statute of limitations applies.  29 U.S.C. § 255.  "A cause of action under the FLSA accrues on the regular payday immediately following the work period for which services were rendered and not properly compensated."  *Shu Qin Xu v. Wai Mei Ho,* 111 F. Supp. 3d 274, 277 (E.D.N.Y. 2015) (citing *D'Arpa v. Runway Towing Corp.,* No. 12-CV-1120, 2013 WL 3010810, at *5 (E.D.N.Y. June 18, 2013)).  In an FLSA collective action, "the statute of limitations application to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." *Garriga v. Blonde Builders Inc.,* No. 17-CV-

---

[8]      Defendant also seeks summary judgment against DeSantis and Uvaydov on the same basis.  The Court need not address Defendant's argument at it relates to these two Plaintiffs because the Court has already granted summary judgment against them on all NYLL and FLSA claims as set forth above in under Section IV(B) of this Memorandum and Order.

0497, 2018 WL 4861394, at *10 (E.D.N.Y. Sept. 28, 2018); *see also* 29 U.S.C. § 256(b) (A claim is deemed commenced in the case of an individual claimant on the "date on which such written consent is filed in the court in which the action was commenced."). Consequently, unlike the statute of limitations in a Rule 23 class action, which is tolled for all putative class members upon the filing of the complaint, "the limitations periods in a FLSA action continues to run until an individual affirmatively opts into the action." *Werst v. Sarar USA Inc.,* No. 17-CV-2181, 2018 WL 1399343, at *9 (S.D.N.Y. Mar. 16, 2018) (citing *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-0935, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011). Further, "[s]igned consents do not relate back to the original filing date of the complaint." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006).

In certain limited circumstances, a court has discretion to equitably toll the limitations period. "Equitable tolling generally may be applied to avoid inequitable circumstances and may be applied as a matter of fairness where a [party] has been prevented in some extraordinary way from exercising his rights." *Alvarado Balderramo v. Taxi Tours Inc.,* No. 15-CV-2181, 2017 WL 2533508, at *5 (S.D.N.Y. June 9, 2017) (citing *Lee*, 236 F.R.D. at 200). When determining whether equitable tolling applies, a court must consider whether the plaintiff (1) has acted with reasonable diligence during the period he seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply. *Id*. (citing *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003), *as amended* (July 29, 2003)).

For purposes of the instant motion, Defendant applies the three-year statute of limitations for willful conduct under the FLSA. *See* Def.'s Mem. at 4. However, Defendant argues that the statute of limitations should be calculated from the date the opt-in consent forms were filed in court, namely, on November 26, 2013 and February 7, 2014. *See* Def.'s Mem. at 6-8. Relying

17

on *Sullivan v. PJ United, Inc.,* No. 13-CV-01275, 2017 WL 10581105, at *2 (N.D. Ala. Feb. 13, 2017), Plaintiffs argue that the statute of limitations should instead be equitably tolled from the date the opt-in consent forms were filed in the arbitration proceeding.

In *Sullivan*, the plaintiffs instituted an FLSA action in district court which was thereafter stayed, at the request of the defendants, until arbitration was conducted under the parties' binding arbitration agreement. *Id*. at *1. During arbitration, the defendants moved -- on three separate occasions -- to vacate three of the arbitrator's rulings favorable to the plaintiff. *Id*. These motions were subsequently denied by the district court. *Id*. After approximately three years of arbitration, the plaintiffs moved to lift the stay of the FLSA action on the basis that the defendants had waived their right to proceed in arbitration by failing to pay the arbitrator's fees. *Id*. In conjunction with their motion to lift the stay, the plaintiffs filed with the court hundreds of opt-in consent forms that were filed in the arbitration proceeding. *Id*. at *2. After the stay was lifted, the defendants moved to strike the opt-in consent forms filed with the court. *Id*. at *1.

The court in *Sullivan* denied the defendants' motion and instead equitably tolled the statute of limitations from the time in which the consents were filed in the arbitration proceedings until they were filed with the court. *Id*. at *3. In so doing so, the court reasoned that the delay in filing the consent forms with the court was caused by "extraordinary circumstances" which were "beyond [plaintiffs'] control and unavoidable." *Id*. at *2. The court found that the consent forms would have been timely filed if not for the defendants' misconduct in demanding arbitration and then failing to pay the arbitrator. *Id*. Noting that the plaintiffs immediately filed the opt-in consent forms with the court after the arbitration was terminated, the court held such action demonstrated that the delay was attributable to the defendants as opposed to any lack of diligence on the part of the plaintiff. *Id*.

Like *Sullivan*, Plaintiffs' delay in filing the opt-in consent forms with the Court -- during the time the action was stayed -- was caused by Home Savings.  In response to then-defendant Home Savings' motion to compel arbitration, this case was stayed pending the resolution of the arbitration on June 28, 2011.  This led Plaintiffs to believe that the opt-in consent forms should properly be filed in the arbitration proceeding instead of with the Court.  While the parties were in arbitration, Home Savings was closed down and Defendant FDIC, as the receiver of Home Savings, repudiated the arbitration agreements.  Thereafter, Plaintiffs were required to participate in an administrative claims review process mandated by FIRREA.  Only after the administrative claim review process concluded were Plaintiffs able to have the stay lifted in this action on March 15, 2013.  Here, Home Savings' demand to arbitrate and subsequent closure resulted in circumstances beyond Plaintiffs' control causing the delay in filing the opt-in consent forms with the Court prior to the stay being lifted.  However, the Court notes that unlike *Sullivan*, where the plaintiff filed the opt-in consent forms with the court immediately upon moving to lift the stay, the Plaintiffs here inexplicably waited until November 26, 2013 and February 7, 2014 to file the remaining opt-in consent forms with the Court.

Accordingly, the statute of limitations period will be tolled from the time in which the opt-in consent forms were filed in the arbitration proceeding until the stay was lifted by the Court in this action on March 15, 2013.  Having determined that the statute of limitations should be tolled during this time, the Court will now assess the Plaintiffs' individual FLSA claims to determine whether they are time-barred.

### 2.   *Application*

#### i.   **Benitez**

Potential opt-in Benitez has not filed an opt-in consent form with the Court and did not file an opt-in consent form in the arbitration proceeding.  *See* Pls.' Opp'n at 2, n. 4; Def's Mem. at 2, 7.  Consequently, Defendant Adams contends that Benitez is now time-barred from doing so.  *See* Def's Mem. at 2, 7.  Although the exact date is unknown, the latest conceivable date Benitez could have worked for Home Savings is February 2012, when Home Savings closed.  Accordingly, since he has not yet filed his opt-in consent form with the Court, Benitez's FLSA claims are time-barred.[9]

#### ii.   **Castaldo**

Plaintiff Castaldo filed an opt-in consent form with the Court on February 7, 2014.  *See* DE 48.  Plaintiff Castaldo acknowledges that his FLSA claims are time-barred and does not oppose the entry of summary judgment against him on these claims.

#### iii.   **Magee**

Plaintiff Magee filed an opt-in consent form in the arbitration proceeding on July 21, 2011.  Def.'s SOMF, Ex. 17.  However, except in connection with the instant motion, Plaintiff Magee never filed an opt-in consent form with the Court.  As stated, the latest conceivable date Plaintiff Magee could have worked for Home Savings is February 2012, when Home Savings closed.  Accordingly, since Plaintiff Magee has not yet filed his opt-in consent form with the court, his FLSA claims are time-barred.

---

[9]       Benitez's claims, if any, under the NYLL would similarly be time-barred. *Perez Garcia v. Hirakegoma Inc.,* No. 17-CV-7608, 2020 WL 1130765, at *7 (S.D.N.Y. Mar. 9, 2020) ("Under the NYLL, the statute of limitations is six years.") (citing NYLL ¶ 198(3))

### iv.   Mansi

Plaintiff Mansi filed an opt-in consent form with the Court on November 26, 2013.  *See*
DE 43.  As discussed further below, Defendant seeks to preclude new factual materials
introduced for the first time in Plaintiff's opposition to the instant motion.  However, even
assuming the factual materials introduced by Plaintiffs were not contested by Defendants, the
evidence does not demonstrate that Plaintiff Mansi filed an opt-in consent form in the arbitration
proceeding.  It does, however, demonstrate that Plaintiff Mansi last worked for Home Savings on
April 22, 2010.  *See* Pls.' Opp'n, Ex. C at 17 [DE 157-3].  Accordingly, even considering all the
evidence available to Plaintiffs, based on the date Plaintiff Mansi filed his opt-in consent form
with the Court (*i.e.,* November 26, 2013) and the date he last worked for Home Savings (*i.e.,*
April 22, 2010), his FLSA claims are time-barred.

### v.   Ambaln, Ciavarella, N. Hernandez, R. Hernandez, Keegan, Laudante, Mansi, Montenegro, Shannon, and Viteritti

Plaintiffs Ambaln, Ciavarella, N. Hernandez, R. Hernandez, Keegan, Laudante,
Montenegro, Shannon, and Viteritti filed opt-in consent forms with the Court on November 26,
2013.  *See* DE 43.  In opposition to the instant motion, Plaintiffs introduce, for the first time,
evidence that Plaintiffs Ambaln, Ciavarella, N. Hernandez, R. Hernandez, Keegan, Laudante,
Montenegro, Shannon, and Viteritti filed opt-in consent forms in the arbitration proceeding on
December 5, 2011.  *See* Pls.' Opp'n, Ex D.  Specifically, Plaintiffs attach as an exhibit to their
memorandum in opposition, an email correspondence dated December 5, 2011 from Plaintiffs'
counsel to a AAA representative as well as then-Defendants' counsel which attaches a number of
opt-in consent forms.  *Id*.  Plaintiffs also introduce, for the first time, evidence regarding the
Plaintiffs' dates of employment with Home Savings.  *See* Pls.' 56.1(b) Response, Ex. C.

Specifically, Plaintiffs attach as an exhibit to their Rule 56.1(a) Response partially unredacted opt-in consent forms which reveal the Plaintiffs' employment dates with Home Savings.  *See id*. These documents evidence both the opt-in consent dates and accrual dates for Plaintiffs Ambaln, Ciavarella, N. Hernandez, R. Hernandez, Keegan, Laudante, Montenegro, Shannon, and Viteritti's FLSA claims.

Defendant Adams contends that, notwithstanding his discovery demands seeking documents exchanged and filed during the arbitration as well as employment dates of the opt-in Plaintiffs, these documents were never produced in discovery.  *See* Def.'s Reply 8-12. According to the Defendant, some of the email correspondence and partially redacted opt-in consent forms lack bates-stamp numbers which Defendant asserts supports his argument that the documents were never produced in discovery.  *Id*. at 9.  On that basis, Defendant maintains that the Court should preclude Plaintiffs from being able to rely on those materials in opposing the instant motion for partial summary judgment.  *Id*. at 10.

Of note, Defendant Adams acknowledges that there is no record of the Arbitration proceeding.  He references the February 1, 2018 email sent to him from AAA Manager Jonathan Weed confirming that any records concerning the Arbitration were destroyed by Arbitrator Dineen after the proceeding.  Without any basis in the record, Defendant Adams wants the Plaintiffs held responsible for that fact:

> There could have been a reliable record.  The American Arbitration Association Rules for Employment Arbitrations (effective November 1, 2009, found at adr.org, Employment Arbitrations Rules, pg. 24) provides that the parties can request a certified copy of the Arbitration record.
>
> Plaintiff's counsel could have requested an order from the Arbitrator about the filing of the consents.

The Federal Arbitration Act, 9 U.S.C. section 1 *et seq*., clearly contemplates records from the Arbitration being made part of the record of a subsequent court proceeding.  Federal Arbitration Act sections 9-13, 9 U.S.C. sections 9-13.

Judge Bianco retained jurisdiction over this case while it was in Arbitration.  Plaintiffs could have made a motion to the Judge about preserving the Arbitration record.

There could have been a provision in the Settlement Agreement between the CAPs and the FDIC as Receiver.  Docket #44-1 or they could have requested some acknowledgement of the filings in the Arbitration in Judge Bianco's Order approving the Settlement Agreement.  Docket #46.

Plaintiffs took none of those actions.

Id. at 5-6.  Defendant Adams faults the Plaintiffs for not taking any of those actions.  Besides placing a non-existent burden on the Plaintiffs in this context, Defendant Adams' statements constitute speculation, not facts or evidence.  The FDIC as Receiver could just as well have requested a copy of the Arbitration record but apparently did not do so.

In continuing his argument, the Defendant attempts to ask and answer why certain things were done or not done with respect to the consent forms – again, not based on facts but rather on conjecture.  Such hypothesizing serves only to reinforce the fact that there are two different versions of what occurred here.  Plaintiffs have submitted as exhibits copies of the consent forms which presumably came from the files of Plaintiffs' counsel.  Plaintiffs' counsel states in his opposition papers that these forms were submitted to the Arbitrator.  Defendant, on the other hand, contends that he requested such materials in discovery and never received them, implying that the materials just recently appeared as part of Plaintiffs' attempt to ward off summary judgment.  As noted, there is no record of the Arbitration proceeding to establish one way or the other whether these forms were part of the Arbitration record or something else.  The Court is also cognizant of the fact that Plaintiffs did not have the opportunity to address a number of the

specific assertions made by the Defendant since they were not raised until the Reply. The bottom line here is that one party says the material was part of the record and the other says it was not. That issue is not properly resolved on summary judgment and should be left to a jury to decide whom they believe.

It is also worth noting, particularly in view of his reliance on Rule 37, that Defendant Adams had the opportunity to address the purported failure by Plaintiffs to produce certain documents during the multiple years while discovery was being conducted. As noted previously, Defendant did so and filed multiple applications seeking Court intervention to compel discovery or to preclude Plaintiffs from introducing documents at a later date. Two of those motions, namely, DE 106 and 107, were denied by Judge Brown for Defendant Adams' failure to comply with the meet-and-confer requirements of Local Civil Rule 37.3. The denials were without prejudice and with the right to renew. A flurry of other motions followed, most of which were once again denied, without prejudice, based on the lack of compliance with Rule 37.3. Judge Brown's Electronic Order of March 2, 2016 denying DE 117 and 118, without prejudice, reflects his admonishment in this regard. Judge Brown did grant, in part, DE 122, Defendant's motion to compel document production and depositions of four collective action filers. *See* April 5, 2016 Electronic Order. The record does not reflect any further action by Defendant Adams to seek relief with respect to document production before discovery eventually closed.

The Court finds somewhat artful the argument that Plaintiffs never turned over their dates of employment when, in reality, that information was within the purview of Home Savings as the employer of the Plaintiffs and the entity for whom Defendant Adams served as CEO. There is no surprise here. Moreover, if Defendant was intent on obtaining that information and Plaintiffs maintained that they did not have it, the Defendant had other alternatives available, including the

24

use of a subpoena to the FDIC.  As noted, these are factual disputes which are best left to a jury.
For these reasons, the Court declines to grant summary judgment in favor of Defendant Adams
on Counts III and IV as to Plaintiffs Ambaln, Ciavarella, N. Hernandez, R. Hernandez, Keegan,
Laudante, Montenegro, Shannon, and Viteritti.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Adams' motion for partial summary judgment is
GRANTED, in part, and DENIED, in part, as follows:

- Summary judgment in favor of Defendant Adams on Counts I and II (NYLL claims) as to Plaintiffs Benitez, DeSantis, Magee, Metrock, Nelson and Uvaydov is GRANTED;

- Summary judgment in favor of Defendant Adams on Counts III and IV (FLSA claims) as to Plaintiffs Benitez, Castaldo, DeSantis, Magee, Mansi and Uvaydov is GRANTED;

- Summary judgment as to Plaintiffs Ambaln, Ciavarella, Nelson Hernandez, Richard Hernandez, Keegan, Laudante, Montenegro, Shannon and Viteritti on Counts III and IV (FLSA claims) is DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
　　　May 21, 2020

　　　　　　　　　　　　/s/ A. Kathleen Tomlinson
　　　　　　　　　　　　A. KATHLEEN TOMLINSON
　　　　　　　　　　　　U.S. Magistrate Judge